## EX PARTE CUTTING.

1. To entitle a petitioner to a writ of *mandamus* to compel a circuit court to allow an appeal from its decree, he must show that he has a clear right to an appeal which has been refused him by that court.
2. *Mandamus* does not lie to compel a circuit court to allow an appeal from its decree by a person not an original party to the suit, unless it appears that his petition to be allowed to intervene was granted, or that he at least acted, or was treated, as a party.
3. An appeal does not lie from an order of the court below, denying a motion in a pending suit, to permit a person to intervene and become a party thereto.

PETITION for a writ of *mandamus* to the Circuit Court of the United States for the Eastern District of Missouri.

George E. Ketcham, on his own behalf and on behalf of all others holding third mortgage bonds of the Pacific Railroad, filed a bill in the Circuit Court of the United States for the Eastern District of Missouri, Nov. 11, 1875, against the Pacific Railroad and certain other defendants, to foreclose a mortgage given to secure the payment of such bonds.

On Jan. 8, 1876, Thomas P. Akers, a stockholder of the Pacific Railroad, filed a motion for leave to come and defend in the action, on the ground that the officers and directors of the company, being themselves interested in the mortgage, did not intend to resist the foreclosure, when, as he alleged, there was a good and valid defence. Feb. 7, by leave of the court, he filed an answer and cross-bill in the cause. At the same time the company filed an answer, substantially admitting the allegations in the bill, but concluding as follows : —

"But, it says, that it is informed that a portion of said stockholders claim that they [the third mortgage bonds] are fraudulent and void, and that the directors of this defendant are guilty of fraud in issuing the same. Therefore, this defendant asks this honorable court to permit any of the stockholders aforesaid to become a party defendant to this suit, upon a proper showing, and make such defence in the premises as they may see proper."

March 10, Ketcham, the complainant, moved the court for an order that the answer and cross-bill of Akers be withdrawn from the files. March 25, Peter Marie, Frank A. Otis, Robert L. Cutting, Jr., James D. W. Cutting, and George R.

Fearing, representing themselves to be stockholders of the company, on leave filed a petition in the cause, stating "that Thomas P. Akers, a stockholder of said company, has filed his answer and cross-bill to the bill of complaint, filed by complainant in this cause, and in said answer and cross-bill avers that he files the same, not only for his own benefit as such stockholder, but for the benefit of all other holders or owners of the shares of said capital stock who may come in and contribute to the cost and expense necessary to the prosecution of the same," and praying "that they may be allowed to come in and defend the said suit and be made co-defendants herein with said Thomas P. Akers, and be joined with him as parties defendant herein, with such other stockholders as may desire to join them as defendants," and "that they may be allowed to adopt the said answer and cross-bill as their answer and cross-bill in this cause, and to join with him in his prayer for relief in the premises."

The record does not show that any action whatever was taken by the court upon this petition after it was filed, or that the parties made any motion in that behalf. It was ordered, April 3, "that the cross-bill of Thomas P. Akers . . . be taken from the files of the court, as the same is found to be defective in form;" "that leave be given to Thomas P. Akers as a stockholder, and the county of St. Louis, claiming to be a stockholder, or trustee for stockholders, to file an amended cross-bill herein within thirty days, upon giving security for costs in the sum of $5,000;" and "that leave be granted to the county of St. Louis to make answer to the bill of foreclosure in this cause, and defend against the same."

April 25, Akers and St. Louis County filed their amended answer and cross-bill pursuant to this leave; but, June 6, they appeared, and by further leave of the court dismissed their cross-bill and withdrew their answer. This being done, the court, on the same day, " being fully advised in the premises, and by consent of the parties to this suit, through their solicitors of record," entered a decree of foreclosure and sale in accordance with the prayer of the bill. Neither Cowdrey nor any one of the present petitioners objected or in any manner interposed against the decree.

Immediately after the decree was entered the court adjourned for the term. On the first day of the next term, Sept. 18, a motion was made to confirm a sale which had been made under the decree, Sept. 6, and which was reported Sept. 15. On the next day, Sept. 19, N. A. Cowdrey, Robert L. Cutting, Jr., Peter Marie, Frank A. Otis, Jacob Cromwell, George L. Kingsland, and George R. Fearing, acting "not only for their own benefit, but for the benefit of all other holders or owners of the capital stock of said Pacific Railroad, who come in and contribute to the cost and expenses necessary for the prosecution of this suit," filed a motion and petition "for liberty to intervene to set aside the decree of June 6, 1876, and sale, and for liberty to demur, answer, plead, or appeal, as advised." In this petition they set forth, among other things, that they, as owners in their own right, and as a committee or agents of others, represented $3,500,000 out of the $7,000,000 or thereabouts of the capital stock of the company; that the decree of June 6 had been improvidently entered; "that at the time or just previous to said order of sale [decree of June 6] being made, the county of St. Louis withdrew its answer to the complaint, and also a cross-bill filed by them, which was pending in this case, without any notice to your orators or to the stockholders of the Pacific Railroad; that also Thomas P. Akers, Esq., had filed an answer and a cross-bill on his own behalf and on behalf of all the other stockholders, which was then pending in this court, and which, upon said sixth day of June, he withdrew, without any notice to the stockholders represented by him;" "that on or about the second day of February, 1876, they authorized N. A. Cowdrey, one of the present petitioners for leave to intervene in this cause, to commence a suit by bill in equity in this court against the Pacific Railroad, the Atlantic and Pacific Railroad Company, Andrew Pierce, . . . C. K. Garrison, . . . and Henry F. Vail and James D. Fisk, to whom the mortgage sought to be foreclosed was made in trust to secure the payment of the bonds, and others, directors in said Pacific Railroad, and directors in said Atlantic and Pacific Railroad Company;" "that said suit is now pending in this court;" and that the bill prays, among other things, "for a

cancellation of the outstanding . . . third mortgage bonds, alleging the same to have been issued in fraud of the rights of the stockholders of the Pacific Railroad."

This petition concludes with a prayer, as follows: —

" Your orators humbly pray the honorable court to take their case into consideration, and, upon finding their allegations and averments to be true, to make an order of this court that your orators may be allowed to intervene as parties defendants in this cause, and they be authorized to make answer, plead, demur, or to appeal, as they by their counsel shall be advised; and that the decree of June 6, 1876, and sale thereunder, be set aside, and for nothing had, or that you will grant such other relief as to equity appertains."

Oct. 3, the following order was made: —

" The motion of said Cowdrey and others, for liberty to intervene to set aside the decree and sale herein, was argued by counsel and submitted to the court; on consideration whereof, and being fully advised in the premises, it is ordered by the court that said motion be denied."

The same parties then made a motion for leave to file a petition to intervene in the cause, and that the decree and sale thereunder be set aside and the cause dismissed for want of jurisdiction; and this motion was denied.

Oct. 7, they again appeared, and made " application for an order allowing an appeal to the Supreme Court of the United States from the order of this court in the matter of N. A. Cowdrey and others; " which was also denied.

The suit of Cowdrey, referred to in the petition filed Sept. 19, was commenced Nov. 13, 1875. The appearance of the defendants was entered Dec. 3. The suit was prosecuted by Cowdrey and others, whose names are not disclosed; but, Dec. 6, the complainants moved for leave to strike out the names of Thomas P. Akers and John S. Vogel, as complainants, and to discontinue the suit as to them. This motion was granted Dec. 11. Jan. 7, an amended bill was filed by leave of the court, to which answers were filed by some of the defendants, Feb. 5. A second amended bill was filed Feb. 7; to which answers were filed by some of the defendants, and demurrers by others, Feb. 7, March 11, March 20, and, by leave,

Sept. 13. No motions or other proceedings were ever had in the case, nor any matters therein set down for hearing or testimony taken.

Upon this state of facts the petitioners now ask that a writ of *mandamus* may issue from this court to the judges of the Circuit Court, " commanding them, or one of them, to grant your petitioners an appeal to this court from the decrees of that court in said cause, and to accept bond to act as a *supersedeas*, and that such appeal be allowed as of the date when said application was made originally in said court, or when it was rejected, as this court shall order."

*Mr. Henry Crawford* for the petitioners.

Cutting, Marie, and other stockholders, having, by leave of the court, upon March 25, 1876, made themselves co-defendants with Akers, and joined with him in his answer and cross-bill, became real and substantial parties to the suit. *Bronson* v. *La Crosse Railroad Co.*, 2 Wall. 283; *Railroad Company* v. *Bradleys*, 7 id. 575; *Peck* v. *N. Y. & L. Steam Co.*, 3 Bosw. 622; *Thayer* v. *Tool Co.*, 4 Gray, 75.

Under such circumstances they are treated as parties to the suit to the extent to which their respective interests are involved. Story, Eq. Pl., sects. 99, 116; 2 Daniell, Ch. Pr. 1213; 2 Smith, Ch. Pr. 111.

Persons of the class interested may by petition be made parties and let into the cause, if their rights and those of existing parties are so interwoven that they will be simultaneously disposed of. 1 Daniell, Ch. Pr. 406; Story, Eq. Pl. 116; *Wood* v. *Dummer*, 3 Mason, 315; *Gorman* v. *Russell*, 14 Cal. 531.

It is not required, according to any authority on the subject, that there shall be any formal order making them parties. The original leave to file their petition is considered to embrace each succeeding application. It *ipso facto* constitutes them parties.

Such persons coming in by petition, although they are not, by formal amendment or otherwise, made parties, are considered as such in the subsequent proceedings. Mitford, Eq. Pl. 178; *Waite* v. *Simple*, 1 S. & S. 219; *Binney's Case*, 2 Bland, 99; *Warfield* v. *Banks*, 11 G. & J. 97; 1 Daniell, Ch. Pr. 429; *Myers* v. *Fenn*, 5 Wall. 205.

In *Harrison* v. *Nixon*, 9 Pet. 491, divers parties not named as defendants intervened by mere petition in the Circuit Court, in a suit brought by a plaintiff, alleging he was the next of kin, against an executor. No order was asked for or granted making them parties. Their petitions were dismissed, and, upon the appeal prayed exclusively by such petitioners, the decree was reversed.

In *Ogilvie* v. *Knox Ins. Co.*, 2 Black, 539, the same rule was followed, and mere petitioners, being of the same class as the original complainant, were considered to be actual parties to the suit.

Other cases exhibit the practical application of this rule. *Blossom* v. *Railroad Company*, 1 Wall. 655; *Wittenburg* v. *United States*, 5 id. 820; *Crawshay* v. *Soutter*, 6 id. 739; *In re Cook & Younghall Railway Co.*, 4 Ch. App. 748; *Galveston Railroad* v. *Cowdrey*, 11 Wall. 459.

The withdrawal of their co-defendants, Akers and St. Louis County, did not eject them from the record, or in any manner deprive them of the full benefit of the pleading which they had made their own. *Kellogg* v. *Forsyth*, 24 How. 186; *Johnson* v. *Hammersly*, 24 Beav. 498; *Armstrong* v. *Stover*, 9 id. 277; *Todd* v. *Daniel*, 16 Pet. 523.

The stockholders were therefore properly before the court, and had the clear legal right to a rehearing on the decree of June 6, or to an appeal therefrom. 2 Daniell, Ch. Pr. 1460; *Ellison* v. *Thomas*, 1 DeG., J. & S. 18; *Kidd* v. *Cheyne*, 18 Jur. 348; *Barker* v. *Barker*, 39 N. H. 408; *Kellogg* v. *Forsyth*, *supra*; *Gifford* v. *Hart*, 1 Sch. & Lef. 409; *Osborne* v. *Uster*, 2 Bro. P. C. 314; *Westcott* v. *Bradford*, 4 W. C. C. 492; *Blossom* v. *Railroad Company*, *supra*; *Wittenberg* v. *United States*, 5 id. 820; *Stratton* v. *Jarvis*, 8 Pet. 4; *Crawshay* v. *Soutter*, 6 Wall. 739; *Bronson* v. *La Crosse Railroad Co.*, *supra*; *In re Cook & Younghall Railway Co.*, *supra*; *McVeigh* v. *United States*, 11 Wall. 259; *N. O. Railroad* v. *Morgan*, 10 id. 256.

*Mr. William M. Evarts* and *Mr. J. O. Broadhead*, *contra*.

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

To entitle the petitioners to the writ asked for in this case,

they must show that they have a clear right to an appeal which has been refused by the Circuit Court. The office of a *mandamus* is to compel the performance of a plain and positive duty. It is issued upon the application of one who has a clear right to demand such a performance, and who has no other adequate remedy. It is never granted in anticipation of an omission of duty, but only after actual default.

This application is for a writ commanding the judges of the Circuit Court, or one of them, to allow the petitioners an appeal from the decrees in the cause, and a *supersedeas*. This is the only specific relief asked; and, in support of the application, it is insisted that Marie, Otis, Cutting, Jr., Cutting, and Fearing were admitted as parties to the suit March 25, when they filed their petition therefor, and that consequently they were in a position to demand an appeal as parties. It would, perhaps, be a sufficient answer to this position to say that no one of these petitioners has ever made application to the Circuit Court or either of the judges for the allowance of an appeal in his favor as a party to the suit. They have only asked to be permitted to intervene and become parties, in order that they might appeal.

But, if this were otherwise, the result would not be different; for the persons presenting the petition of March 25 never did in fact become parties, and it is apparent from the record that their present claim in that regard is an afterthought. They filed their petition to be made defendants in the suit, but it was never granted. Not only was no express order made to that effect, but there is nothing to show that they were ever in any manner recognized as parties, or that they ever supposed they were parties. Formal orders were made and conditions imposed upon the admission of Akers and St. Louis County as defendants. But they afterwards withdrew, and neither Cutting nor any of his associates attempted to act in their stead. Subsequently he and some of his co-petitioners united with other persons in another petition for leave to intervene, without in any manner claiming advantage from their former action, or even alluding to it.

We are aware that there are cases in which persons have been treated as parties to a suit after having filed a petition for

leave to come in, when no formal order admitting them appears in the record, but in all such cases it will be found that they have acted or have been recognized as parties in the subsequent proceedings in the case.    Thus, in *Myers* v. *Fenn*, 5 Wall. 205, " the petitions were filed without any order of the court, but no objection was made, and the hearing went on as if an order had been granted ; " and in *Harrison* v. *Nixon*, 9 Pet. 491,. " inquiries were made as to the respective claims," as asked for, and " as to all parties who were claimants before the court by bill, petition, or otherwise, their complaint, petition, and proceedings were dismissed."    So, in *Ogilvie*. v. *Knox Ins. Co.*, 2 Black, 539, petitions were filed by certain creditors praying to be made parties, and that a receiver might be appointed, which was done ; and in *Bronson* v. *La Crosse Railroad Co.*, 2 Wall. 304, certain stockholders in a corporation were permitted to appear in a cause to which the corporation was a party, and present their several claims by answer in the name of the corporation ; but this having been afterwards found to be irregular, the answers were considered " rather by indulgence than a matter of strict right as the answer of the individual stockholders."    Upon the same principle, it was held in *Railroad Company* v. *Bradleys*, 7 Wall. 575, that where an appeal had been prayed for, and subsequently an appeal bond, approved by one of the judges, had been filed in the court, it would be inferred that an appeal had been allowed, although there was no express order to that effect in the record.

From this it is apparent that if one wishes to intervene and become a party to a suit in which he is interested, he must not only petition the court to that effect, but his petition must be granted ; and while it is not necessary for him to show that he has actually been admitted by an express order entered upon the record, he must at least make it appear that he has acted or has been treated as a party.    That, as we have seen, is not the case here.    These petitioners seem to have been content to leave their interests in the hands of Akers ; and, when he went out, they went with him.    That the court understood this to be so is apparent from the following statement made by the judges in their return to the rule to show cause: " On June 6, 1876, . . . said Akers and said St. Louis County withdrew their

answers and dismissed their cross-bills, both said Akers and said St. Louis County purporting to act for themselves as stockholders, and for all other stockholders who might join them."

Upon this state of facts it is impossible to say that the petitioners, or any of them, have established their right to appeal as actual parties to the suit before the decree.

No appeal lies from the order of Oct. 3, refusing them leave to intervene and become parties; for that was only a motion in the cause, and not an independent suit in equity appealable here.

Neither can these petitioners appeal as stockholders. Only parties, or those who represent them, can appeal. The stockholders do not represent the corporation, but for some purposes the corporation represents them. They are sometimes admitted as parties to a suit, for the purpose of protecting their own interests in the corporation against unfounded and illegal claims against it, but this " remedy is an extreme one, and should be admitted by the court with hesitation and caution." *Bronson* v. *La Crosse Railroad Co.*, 2 Wall. 302. It is always addressed to the sound judicial discretion of the court. That we cannot control by *mandamus*.

We need not consider what rights these petitioners would have if Akers had not withdrawn his intervention before the decree. After his withdrawal, they had no representative stockholder party to the suit, and their position is the same it would have been if no parties had ever intervened in their interest.                                   *Mandamus denied.*